IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:16-cv-0669-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| WARREN MECHANICAL, LLC, *d/b/a* | ) | |
| WARREN MECHANICAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The following matters are before the court on Defendant Warren Mechanical's ("Warren") motion for reconsideration on the court's September 29, 2017 order ("the order"). ECF No. 46. For the reasons set forth below, the court grants the motion for reconsideration.

## I. BACKGROUND

The instant action arises out of an insurance coverage dispute between Owners Insurance Company ("Owners") and its insured, Warren, regarding certain alleged misrepresentations in Warren's January 21, 2015 application for workers' compensation insurance. ECF No. 28-3, Application. Warren is a medium-sized construction company that specializes in the propane and natural gas industry. ECF No. 28-1, Steve Dep. 12:11–14. Warren was founded in 2006 by Steve Warren ("Steve"), who is its sole owner. In 2014, one of Warren's major customers required it to obtain an "anti-subrogation endorsement" in its workers' compensation policy. ECF No. 37 at 3. Warren contacted its insurance agent, the Creech Roddy & Watson Insurance Agency ("CRW"), which informed Warren that it would need to switch insurers to obtain the

1

required coverage. Id. Warren's primary contact at CRW, Robert Nalley ("Nalley"), suggested Owners as a replacement insurer. Id.

Warren maintains that Steve and Nalley met a few days before CRW submitted Warren's application for the new policy, but Nalley forgot to bring the application to the meeting. Steve Dep. 22:10–24:3. Rather than retrieve the application, Nalley asked Steve a number of questions and told Steve he would fill out the application later. Id. Nalley could not provide Steve with a quote for the policy without first completing the application, so the pair arranged for Steve's wife, Raynee Warren ("Raynee"), to deliver a check for the premium amount on the policy to CRW's office at a later date. Id. at 35:14–36:1.

Nalley did not personally prepare the application. In fact, Nalley was not even present at the time the application was completed. Instead, Aura Lewis ("Lewis"), a newly hired CRW employee, completed the application based on information provided to her through communications with Nalley. Lewis Dep. 9:6–10:23, 34:11–20. A more senior employee of CRW, Rebecca Hipp ("Hipp"), was also present when Lewis completed the application. Id. at 36:4–7. It was Hipp who ultimately signed the application on CRW's behalf. Application at 4.

When Raynee arrived at CRW's office to drop off Warren's premium check, the CRW receptionist instructed her to sign the application. ECF No. 37-6, Raynee Dep. 11:6–20. Raynee asked CRW whether it was appropriate for her to sign the application, and was told that it was, at which point she signed the application. Id. at 12:20–25. Raynee now claims that she did not have the authority to sign the application, and only did so because she was "in haste" and "didn't think about it." Id. at 13:1–6. Indeed,

Raynee testifies that she did not even read the application, and that CRW pressured her to sign it by telling her that Warren would not be allowed on a job site unless the application was signed immediately. Id. at 13:20–14:21.

The application stated that:

(1) [Warren's] business operations consisted of "PLUMBING";
(2) [Warren] had only two full-time employees - one "Plumbing NOC & Drivers" employee under National Council on Compensation Insurance ("NCCI") classification code 5183 and one "Clerical Office Employees NOC" employee under NCCI classification code 8810;
(3) [N]one of [Warren's] work was performed above 15 feet; and
(4) [Warren's] business did not give rise to "[a]ny exposure to radioactive materials, flammables, explosives, caustics, fumes, landfills, asbestos, wastes, fuel tanks, etc."

Application at 2–3. Steve has unambiguously stated that the latter three of these representations were inaccurate. Steve Dep. 29:2–21, 31:3–21. As noted above, Steve has also described Warren as a construction company that specializes in the propane and natural gas industry. Id. at 12:11–14. While this work certainly involves pipes, Warren has admitted—through its failure to respond to Owners's requests for admission—that neither Warren nor Steve are "licensed plumber[s]" pursuant to S.C. Code § 40-11-410. ECF No. 28-17, Requests for Admission.

Owners—unaware of these misrepresentations—issued a policy providing the requested coverage for the period of January 22, 2015 to January 22, 2016 (the "Policy"). ECF No. 10 ¶ 11. Around a month after the Policy was issued, Warren hired Scott Gerhard ("Gerhard"). Gerhard was injured on December 7, 2015 when nitrogen was released from a propane tank he was working on nearly twenty feet above the ground, causing him to fall and suffer second degree burns. ECF No. 28 at 4–5; ECF No. 34 at 6. Gerhard made a claim to Owners for workers' compensation benefits, which Owners

denied on the ground that there was no valid policy in place.  ECF No. 37-10, Owners's Denial Letter.  Gerhard then filed a hearing request with the South Carolina Workers' Compensation Commission ("SCWCC").  Despite denying coverage, Owners initially hired an attorney to represent Owners and Warren in connection with Gerhard's claim.  ECF No. 37-11, Email to Aura Lewis.  On April 7, 2016, another attorney appeared in Gerhard's SCWCC case solely on Owners's behalf, and asked the court to find that the Policy did not cover Gerhard's claim.  ECF No. 37 at 6.  Owners later filed a motion in the SCWCC proceedings to have the Policy declared void ab initio.  Id.  The SCWCC denied this motion, leaving it to be addressed at the merits hearing that would be scheduled after the parties conducted discovery.  ECF No. 37-12, SCWCC Proceedings.  The SCWCC conducted a hearing on March 30, 2017 at which the commissioner ordered mediation.  ECF No. 44, Dworjanyn Letter.  To the court's knowledge, mediation has not yet been successful, and the matter is still before the SCWCC.

On March 2, 2016, Owners filed the instant federal action seeking to have the Policy declared void ab initio.  ECF No. 1 ¶¶ 20–23.  On April 11, 2016, recognizing the jurisdictional problems presented by its request, Owners amended its complaint to state that "[n]o employees' rights are involved in this action, as this is solely a dispute between Owners and the insured, Warren Mechanical.  The issues in this case are not proper before the [SCWCC]."  ECF No. 10 ¶ 14.  Owners has further clarified that "this litigation was initiated to provide for the determination as to Owners' duties and obligations under the policy as to any other potential claims that may arise under the policy at issue," and as such, the court need not "address issues relating to any [of Gerhard's] claims."  ECF No. 39 at 2.

On January 9, 2017, Warren filed a motion to dismiss, or in the alternative, for summary judgment. ECF No. 37. On September 29, 2017, the court denied the motion. ECF No. 45. On October 27, 2017, Warren filed a motion for reconsideration of the court's order. ECF No. 46. Owners filed a response on November 7, 2017, ECF No. 47, and Warren replied on November 14, 2017, ECF No. 48.

## II.  STANDARD

### A.  Rule 59(e)

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." While Rule 59(e) does not supply a standard to guide the court's exercise of its power to alter or amend, the Fourth Circuit has recognized that a court may grant a Rule 59(e) motion "only in very narrow circumstances:  (1) to accommodate an intervening change in controlling law, (2) to account for new evidence not available at trial, or (3) to correct a clear error of law or prevent manifest injustice." Hill v. Braxton, 277 F.3d 701, 708 (4th Cir. 2002). Rule 59(e) motions may not be used to make arguments that could have been made before the judgment was entered. See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Moreover, "[a] party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such a motion should not be used to rehash arguments previously presented or to submit evidence which should have been previously submitted." Sams v. Heritage Transp., Inc., 2013 WL 4441949, at *1 (D.S.C. August 15, 2013).

Rule 59(e) provides an "extraordinary remedy that should be used sparingly." Pac. Ins. Co., 148 F.3d at 403 (internal citation omitted); Wright v. Conley, 2013 WL

314749, at *1 (D.S.C. Jan. 28, 2013). Whether to alter or amend a judgment under Rule 59(e) is within the sound discretion of the district court. Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005).

**B. Rule 54(b)**

Federal Rule of Civil Procedure 54(b) states, in relevant part, that

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

A motion brought under Rule 54(b) is judged by similar standards as a motion brought under Rule 59(e), which may only be granted for the following reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Grayson Consulting, Inc. v. Cathcart, 2014 WL 587756, at *1 (D.S.C. Feb. 14, 2014) (quoting Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)); Slep-Tone Entm't Corp. v. Garner, 2011 WL 6370364, at *1 (W.D.N.C. Dec. 20, 2011).

### III. DISCUSSION

Warren asks the court to reconsider its prior order denying Warren's motion to dismiss, pursuant to Federal Rule of Civil Procedure 59(e). Rule 59(e) applies to motions to alter or amend a judgment. The court's September 29, 2017 order was not a final judgment, but merely a decision "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties [and] does not end the action." Fed. R. Civ. P. 54(b). As such, Rule 54(b) is the appropriate

6

rule, although courts judge Rule 54(b) motions using the same standard as for a Rule 59(e) motion.  Courts will only grant a motion to reconsider: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  Grayson Consulting, 2014 WL 587756, at *1.  Here, new facts have arisen that lead the court to reverse its earlier order.

Owners brought the instant action to have the policy declared void ab initio.  Warren originally moved to dismiss this action based on the court's lack of subject matter jurisdiction and on Owners's failure to state a claim upon which relief can be granted.  ECF No. 37 at 7.  It argued that the court lacks subject matter jurisdiction because the underlying matter was still pending before the SCWCC.  Id.  The court initially found this argument not relevant, based on its understanding that Gerhard had settled his claim before the SCWCC.  ECF No. 45 at 8.  However, it has since been brought to the court's attention that Gerhard has not actually settled his workers compensation claim, nor has the SCWCC adjudicated the matter.  The court initially misunderstood a series of email communications it had with the parties, from which it was led to believe that the underlying suit had settled.  Warren's motion to reconsider brought these misunderstandings to light, and Owners does not dispute that Gerhard's claim is still pending before the SCWCC.  Since the motion to reconsider was filed, the court has not received any other updates from the parties indicating that the underlying suit has been resolved.  As such, the court grants this motion to reconsider on the basis that Gerhard's suit is still ongoing before the SCWCC.

The court's original decision to not abstain from exercising jurisdiction over Owners's declaratory judgment action was based largely on this erroneous understanding that Gerhard had settled his SCWCC claim.

"A federal court has the discretion to decline to entertain a declaratory judgment action, but . . . the court must do so only for 'good reason.'" Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 965–66 (4th Cir. 1994) (quoting Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)).

> Because the remedial discretion conferred by the Declaratory Judgment Act must be liberally exercised to effectuate the purposes of the statute, . . . [the Fourth Circuit] ha[s] held that a federal district court should normally entertain a declaratory action within its jurisdiction when it finds that the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

Id. at 965 (internal alterations and quotations omitted) (quoting Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994). In making this determination, a district court must consider the following factors:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state court; (2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; (3) whether the federal action might result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or of law; and (4) whether the federal action is being used merely as a device for "procedural fencing," i.e., to provide another forum in a race for res judicata.

Id. at 966.

The court originally analyzed this four-factor test in light of its faulty belief that there was no longer an underlying state action. It first noted that, while the state of South Carolina has an interest in managing workers' compensation claims, the matter before the

court is fundamentally an issue of contract formation, and federal courts are well-equipped to adjudicate contract disputes. Federal courts are indeed capable of analyzing contract disputes. However, state courts are just as capable of adjudicating a contract dispute. On balance, this factor weighs equally in favor of the court exercising jurisdiction as it does the court abstaining from exercising jurisdiction.

Thus, the court turns to the final three factors, which provide "good reason" for the court to abstain from exercising jurisdiction in this case. The court originally rejected the idea that the instant action could be resolved more efficiently in state court, that it could result in conflicting decisions from the federal and state courts, or that it was being used as a device for "procedural fencing"—all because it was led to believe that there was no underlying state court action. However, that ground no longer exists, and the Nautilus factors no longer weigh in favor of exercising jurisdiction over the case.

The court is particularly persuaded by the third factor—that if this court adjudicates this declaratory judgment action, it might result in unnecessary entanglement between the federal and state systems. Owners argues that it only seeks to clarify the rights between the parties for any future claims that might arise, and this court's decision will have no impact on Gerhard's claim. Owners asks the court to simply decide whether Warren's alleged material misrepresentations prevented the formation of a contract for insurance. The role of the SCWCC, by contrast, is to determine whether Gerhard is entitled to coverage for the injuries he incurred while on the job. However, in order for the SCWCC to make that determination, it will first have to assess whether a contract for insurance even existed at the time of Gerhard's injury—the exact question before this court. If this court does not abstain, it is possible that it will decide that the contract was

9

or was not properly formed, while the SCWCC could decide the opposite. It is in the interest of federalism to avoid situations where the state and federal courts might reach different results regarding the same issue. Additionally, under the second factor, it is far more efficient to have only the SCWCC determine whether the contract should be declared void <u>ab initio</u>, rather than having both this court and the SCWCC engage in that analysis.

The <u>Nautilus</u> factors, considered in light of the fact that Gerhard's claim is still pending before the SCWCC, provide "good reason" for this court to allow the state court to resolve this matter. Thus, the court chooses to exercise its discretion under the Declaratory Judgment Act to abstain from hearing the case, and dismisses the case without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** Warren's motion to reconsider its September 29, 2017 order and dismisses the case without prejudice.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**January 11, 2018
Charleston, South Carolina**